## CASSANDRA, DON C., AND CORNELIUS LOVEJOY v. N. R. RAYMOND AND OTHERS.

[In Chancery.]

*Will.    Legacy Charged on Real Estate.    Constructive Notice.    Parties.*

1.  A will, charging the real estate in contention with the payment of certain legacies, was recorded in the probate records. A deed of a part of the land executed subsequently by the residuary legatees, who accepted the real estate thus encumbered, specifically describing their interest and referring to the probate records, was recorded in the town clerk's office. There were several mesne conveyances, in which reference was made to the said previous deeds. The defendants purchased without actual notice; *Held*, that the law will impute notice to them; that they were put upon inquiry and charged with such knowledge as they would or might have acquired by making inquiry; that the orators, those interested in the legacy thus charged, have an equitable lien on the entire estate; but that part undisposed of, if any, should be first applied in payment, and the defendants should pay the balance in order to redeem.
2.  One of the legatees who refused to become an oratrix cannot be joined as defendant.

BILL IN CHANCERY.    Heard on bill and answers, December Term, 1883, POWERS, Chancellor.    Bill dismissed.

The will was, in part: "I give and grant to my daughters * * * the yearly interest on the sum of $800 each * * * which interest is to be paid to my said daughters by my said three sons. * * * And it is my will that the heirs of each of my said two daughters, if any, when they shall arrive at full and lawful age shall receive the sum of $800, which shall be paid such heirs by my three sons unless my said daughters shall choose to have the said sum of $48 each paid to them as before, in which case the money not to be

paid to my said heirs until the death of my said daughters. * * * And I herein will and grant to my three sons * * * * * the sum of $1,600 in trust for my two daughters; the principal in no case to be paid to either of them, but to share equally in the yearly interest. * * * And it is my will, at the time of the settlement of my estate, if my said daughters shall require security for the payment of such interest, yearly by my said sons, they shall give the same. And my said sons shall give security to my said wife. * * * * In case said sum of $800 shall be paid to the heir first arriving at age, such heir shall receive said sum in trust for such heirs, sister or brothers; as it is my intention that the heirs of each of my daughters shall share equally in such sum so given in trust. Should either of my said daughters have issue and die before such shall arrive at full age, the interest to be paid for the support of said heirs by my said three sons until they shall arrive at full age, at which time the principal is to be paid to said heir in trust. * * * * The residue and remainder of my estate, both real and personal, I give and grant to my three sons * * * in equal proportions, without regard to age or condition, on condition that they shall provide for and support their mother, Orpha Raymond, as is hereinbefore mentioned, so long as she shall remain unmarried; and shall also, at all times, do by their mother as is hereinbefore particularly mentioned, and treat her with all the civilities due her as a mother; and also, on condition my said sons shall faithfully perform their duties as trustees for my daughters and their heirs as is mentioned herein."

*P. K. Gleed,* for the orators.

The words in the will, "residue and remainder," are sufficient to create a charge on the land received by the sons. 2 Jarn. Wills, 582, *n.; Dunbar* v. *Dunbar,* 3 Vt. 472; *Scott* v. *Patchin,* 54 Vt. 253; *Casey* v. *Casey,* 55 Vt. 518; *Sherman* v. *Sherman,* 4 Allen, 393; 1 Red. Wills, 279; 1 Roper Leg. 674; *Taft* v. *Morse,* 4 Met. 523; *Knotts* v. *Bailey,* 54 Miss. 235; 2 M. & C. 695; Adams Eq. 397; *Gardner* v. *Gardner,* 3 Mason, 178; 2 Perry Tr. s. 796; *Andrews* v. *Sparhawk,* 15 Pick. 393; *Cole* v. *Turner,* 4 Russ. 376; 1 Red. Wills, 279; 12 Ch. Div.

162; *Gallemore* v. *Gill*, 8 De G. M. & G. 566; *Lewis* v. *Darling*, 16 How. 1; 7 Paige, 421.

The purchasers were put upon inquiry and were bound to take notice of all that is shown by the public records. *Hill*. v. *Murray*, 56 Vt. 177; *Scott* v. *Patchin, supra;* 36 Vt. 210; 16 Id. 179; 49 Pa. St. 223; *Gardner* v. *Gardner*, 3 Mason, 178; 15 Pet. 93; 3 Wash. Real Prop. 292; *Oliver* v. *Piatt*, 3 How. 333.

*George Wilkins,* for the defendants.

It is insisted that, on a fair construction of the will, the three sons had an implied power of sale; the intention of the testator, not to embarrass his sons in the sale of the estate, by a charge thereon, is apparent from this provision in the will: "If my said daughters shall require security for the payment of such interest yearly by my said sons, they shall give the same." Thus clearly indicating the testator's expectation that, in the absence of a requirement of such security, the performance of their duty under the will would depend on their personal honor. If there had been an express provision in the will that the sons could sell, there would be no doubt but that they could convey a complete title to a *bona fide* purchaser, who would be under no obligation to see that the fund was properly applied. Story Eq. 1124–1135; Hill. Trust. 363; 12 E. L. & Eq. 357.

An implied power to sell is as effective as an express power.

The opinion of the court was delivered by

ROYCE, Ch. J. Asahel Raymond, by his will executed April 27, 1849, devised the yearly interest on $800 to each of his two daughters, Harriet R. Thomas and Elizabeth R. Lovejoy, and directed that such interest be paid to them by his three sons, as is mentioned hereafter; and further directed that when the heirs of either of his said daughters should arrive at lawful age said sum of $800 should be paid to them, unless his said daughters should

choose to have said sum of $48 paid to each of them annually as before. There were further provisions as to the disposition to be made of said $1,600, in case of his daughters, or either of them, dying without issue, which are not necessary to be noticed. He devised to his three sons, George, Asa, and Nathan R. Raymond, the sum of $1,600 in trust for his two daughters aforesaid, the principal in no case to be paid to them, but they to share equally in the interest, which was to be paid to them yearly, commencing in one year from his decease, with a provision that in a certain contingency the principal might be paid to the heirs of his said daughters, as is above stated.

The residue and remainder of his estate, both real and personal, he devised to his three sons above named, upon condition that they should support and provide for their mother as required by the will, and faithfully perform their duties as trustees for his said daughters and their heirs, as is mentioned in said will.

The legacies to the testator's daughters were made upon the supposition and belief that the testator's estate, after paying debts and the expenses of settlement, would amount to $5,000, and if the estate should not amount to that sum, the legacies were to be proportionally diminished. Upon the final settlement of the estate, the amount passed over to the trustees under the will was $3,333.38.

At the time of the decease of the testator, he was the owner of the real estate described in the bill. His said three sons took possession of the same, after the probate of the will, claiming to be the owners, and have sold and conveyed portions of it to the defendants, Porter, Pike, Straw, and Webster. The daughter, Elizabeth R., died September 25, 1852, leaving two children, the orators, Don C. and Cassandra Lovejoy, and the orator, Cornelius Lovejoy, the husband of the deceased Elizabeth R., who claims some interest in the estate of the said Asahel Raymond, by virtue of some conveyance from the said Don C. The other daughter,

Harriet R., being a widow far advanced in years and having no children or heirs, or expectation of issue or heirs, re-fused to join as oratrix in bringing the bill, and so was made a defendant.

The orators pray that the amount due and to become due on account of those legacies may be ascertained; that the defendants may be decreed to pay the same, and that their payment may be decreed to be a charge upon all the real estate that the testator owned at his decease, and that in default of payment the possession of all said real estate may be decreed to them.

The legacies were made a charge upon the entire estate; for the residue and remainder were devised upon condition that the legacies should be paid as provided in the will; and the estate could not be relieved from that burden until they were paid, or security for their payment had been accepted. Such construction of the will best accords with the intention of the testator, as manifested by the terms of the instrument, taken in connection with the subject-matter and the surrounding circumstances. The residuary legatees took the estate burdened with their payment. The title that they acquired under the will was not absolute, but might become so upon the payment of the legacies. Their estate was an equity of redemption; and hence all they could convey was that equity.

The residuary legatees having accepted the provision made for them by the will, it became their duty to pay the legacies. A lien having been reserved by the will as security for the payment of the legacies, upon the entire estate, has anything since intervened which will in equity prevent its enforcement in the manner sought? As to that portion of the real estate which has not been conveyed by the residuary legatees there is no embarrassment. It is a part of the estate unincumbered by any legal or equitable right that can be claimed to be superior to the lien created by the will.

The residuary legatees have conveyed for a valuable consideration portions of the real estate to the defendants, Porter, Pike, Straw, and Webster, who had no actual notice that there was any charge upon it; and they claim the protection which the law generally accords to *bona fide* purchasers without notice. It is to be determined whether they took their title under such circumstances that the law would impute notice to them of the provisions in regard to the legacies made by the will.

The will of Asahel Raymond was never recorded in the land records of the town of Stowe. The first conveyance made by the residuary legatees was by George and Asa Raymond to N. R. Raymond, by deed dated November 18, 1861, in which the property was described as one equal undivided half of the saw mill, grist mill, and land attached, and the whole of about twenty-three acres of pasture land known as the Downer pasture, and one-half of ten fifty-acre wild lots, and all their right or interest to the estate of Asahel Raymond, late of Stowe, deceased, meaning all their interest in and to the property of said estate, either real or personal, whether above particularly described or not; and reference was made therein to town and probate records for a description of said property; conditioned for the payment of certain debts, "and also to clear us from all interest and amount to be paid E. R. Lovejoy and Harriet Thomas, or their heirs, as per said Asahel's last will and testament;" and further describing their interest in said property as being what they obtained from said estate and what they thereby conveyed. At the same time N. R. Raymond executed a mortgage to George and Asa Raymond of the same property, conditioned, among other things, that he, his heirs or assigns, should pay the interest due, or to become due, to E. R. Lovejoy and Harriet Thomas and their heirs, as per the last will of Asahel Raymond, and save them harmless, and clear them from the same.

Several mesne conveyances were made of said property

before it was conveyed to the defendants, Porter, Pike, Straw, and Webster, and in all of said conveyances it was described either as having been purchased of N. R. Raymond, or as having belonged to the estate of Asahel Raymond, and reference was made to previous deeds. The circumstances under which the last named defendants purchased the property were such as to put them upon inquiry as to the state of the title; and the law will impute to them such knowledge as they would or might have acquired by making such inquiry. Such an inquiry would have disclosed to them that the property they were purchasing was charged with the payment of the legacies named in the will of Asahel Raymond; and so they purchased the property with that charge resting upon it.

The orators have an equitable lien upon the entire estate that belonged to Asahel Raymond, at the time of his decease, to secure the payment of said legacy. If any part of that estate remains undisposed of, it should be first appropriated to the payment of the legacy; and if anything shall then remain due, it is the duty of the other defendants, who claim title to other portions of it, to pay the balance in order to redeem their estates. The sum that each should contribute cannot be determined upon any evidence now before us, and will have to be ascertained by the Court of Chancery.

The rights of Harriet Thomas under the will cannot be adjudicated in this suit. She refused to become an oratrix. The orators have no present interest in the legacy given to her, and we cannot anticipate that they will succeed to her right as heirs to her estate. The bill, as to her, should be dismissed without costs.

The Decree of the Court of Chancery is reversed and cause remanded, with a mandate that the amount due on the legacy given to Elizabeth R. Lovejoy be ascertained, and that a decree be entered for the orators for that amount with costs, according to the prayer of the bill.